IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY ADAM SHADE,** | : | CIVIL NO. 1:16-CV-1635 |
| **Plaintiff** | : | (Chief Judge Conner) |
| v. | : | |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

Presently before the court is a motion (Doc. 91) for preliminary injunction filed by plaintiff Troy Shade ("Shade"), an inmate currently confined at the State Correctional Institution, Retreat, in Hunlock Creek, Pennsylvania ("SCI-Retreat"). For the reasons set forth below, the court will deny the motion for preliminary injunction.

### I. Legal Standard

Inmate *pro se* pleadings which seek emergency relief in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. Preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (citing AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994)). In determining whether to grant a motion seeking preliminary injunctive relief, the court considers the following four factors:

(1) the likelihood that the movant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the challenged conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). The Third Circuit recently clarified this standard. See Reilly v. City of Harrisburg, 858 F.3d 173 (3d Cir. 2017). As a threshold matter, the movant must establish the two "most critical" factors: likelihood of success on the merits and irreparable harm. Id. at 179. Under the first factor, the movant must show that "it can win on the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not." Id. Under the second factor, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. Id. Only if these "gateway factors" are satisfied may the court consider the third and fourth factors and "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id. at 176, 179.

## II. Discussion

Shade's claims stem from the alleged lack of medical care he received at SCI-Retreat and the State Correctional Institution at Dallas following surgery for a detached retina. (Doc. 34). In 2016, Dr. Thomas Sharkey, an ophthalmologist at Eye Care Specialists, diagnosed Shade with glaucoma. (Doc. 94, ¶ 2). Since that diagnosis, the prison's glaucoma clinic has monitored Shade's intraocular

2

pressures. (Id. at ¶ 5). Dr. Hartzell, an ophthalmologist, supervised the clinic and diagnosed Shade with glaucoma. (Id.) In May 2017, Shade was transported to Geisinger Medical Center for surgery to remove suspected silicone oil in the left eye. (Id. at ¶ 8). Dr. Sachin Patel noted that, in addition to a history of retinal detachment, Shade also had a history of advanced glaucoma in the left eye. (Id.) Each of these ophthalmologists recommended that Shade use eye drops to control his glaucoma. (Id. at ¶¶ 4-7, 9, 19, 28, 32). Dr. Patel also advised Shade of the risk of losing his vision if he fails to take his medications. (Id. at ¶¶ 9, 15).

Because Shade believes that he does not have glaucoma, he has refused all glaucoma medication since July 2017, refused participation in several onsite glaucoma clinics, and refused to be treated in follow-up by Dr. Patel. (Id. at ¶¶ 10-13, 15-18, 23, 26, 29-31, 33-37). Medical providers SCI-Retreat have educated Shade regarding his glaucoma and the risks of noncompliance with medication and have changed his medications from Keep on Person to Direct Observation Therapy. (Id. at ¶¶ 14, 24, 26, 27, 31, 37).

In the instant motion, Shade contends that defendants, in retaliation for Shade filing grievances and request slips, are "fraudulently claiming and attempting to coerce the plaintiff into believing that he has Glaucoma which the plaintiff avers is False Misleading information." (Doc. 91, at 2). Shade believes that he does not have glaucoma and asserts that his elevated ocular pressure is the result of a silicone oil bubble in his left eye. (Id. at 2-3). The court interprets Shade's request for relief as seeking an order for defendants to discontinue his

3

glaucoma medication. The court finds that Shade cannot meet the heavy burden of establishing that injunctive relief is warranted.

### A. Likelihood of Success on the Merits

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see

4

also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

Shade has not established that any of the defendants acted with the requisite deliberate indifference to his serious medical needs. The medical records reveal that Shade has been diagnosed with glaucoma by three different ophthalmologists. (Doc. 94, ¶¶ 2, 5, 8). Defendants maintain that they have a medical and ethical responsibility to continue prescribing and offering medication to Shade, though they have never forced him to take his medications. Furthermore, defendants have advised Shade that discontinuing his glaucoma medication will result in blindness, and they have repeatedly educated Shade about glaucoma and the risks of noncompliance with medication. It is clear that Shade has access to medication but has declined to take the medication. Hence, Shade's conduct is medication refusal, and an Eighth Amendment violation has not been established. See Brown v. Rozum, 453 F. App'x 127 (3d Cir. 2011) (acceptance of an inmate's refusal of medication does not state a claim for deliberate indifference). Shade's request for preliminary injunctive relief does not establish a reasonable likelihood of success on the merits of his Eighth Amendment medical care claim.[1] See Crews v. Beaven, No. 07-2217, 2010 WL 3632144, at *11 (M.D. Pa. Sept. 10, 2010) (holding that the prisoner's refusal to comply with security procedures in connection with the

---

[1] By order dated August 22, 2019, the court granted the medical defendants' motion for summary judgment on the ground that Shade failed to exhaust administrative remedies. (Doc. 97). The other group of defendants, the corrections defendants, have not yet filed a dispositive motion.

5

distribution of medication is equivalent to a "medication refusal" and does not constitute deliberate indifference to that prisoner's medical needs).

### B. Irreparable Harm

Irreparable injury is harm of such an irreversible character that prospective judgment would be "inadequate" to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). An injunction will not issue "simply to eliminate a possibility of a remote future injury . . . " Acierno v. New Castle County, 40 F.3d 645, 655 (3d Cir. 1994) (citations omitted). Shade has not presented any evidence that he will suffer irreparable harm by the denial of the injunction. Quite the contrary, if the court orders defendants to discontinue Shade's glaucoma medication, defendants have presented evidence that he will eventually go blind. (See Doc. 94-1, at 21, 31-32). To state the obvious, the court finds that Shade has not shown an immediate, irreparable harm justifying a preliminary injunction. Because Shade failed to "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted," the motion will be denied. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis in original) (quoting Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987)).

### III. **Conclusion**

Based on the foregoing, the court will deny the motion for preliminary injunction.

A separate order shall issue.

                                                /S/ CHRISTOPHER C. CONNER
                                                Christopher C. Conner, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania

Dated:       September 6, 2019