IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY ADAM SHADE,** | : | CIVIL NO. 3:16-CV-1635 |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Troy Adam Shade ("Shade"), an inmate confined at the State Correctional Institution, Retreat, in Hunlock Creek, Pennsylvania ("SCI-Retreat"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 34). The remaining defendants are the Pennsylvania Department of Corrections ("DOC"), John Wetzel, Theresa DelBalso, Kathy Brittain, Sandy Miklaszewicz, Norm Demming, John Deiter, Glenn Geisinger, Robert Shuminsky, and Dorina Varner (collectively, "corrections defendants").[1] Pending before the court is the corrections defendants' motion (Doc. 102) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Shade

---

[1] By order dated August 22, 2019, the court granted the medical defendants' motion for summary judgment based on Shade's failure to exhaust administrative remedies. (Doc. 97).

failed to respond to the motion and the time for responding has now passed.[2] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the court will grant the corrections defendants' motion and enter summary judgment in their favor.

I.  **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

---

[2] Shade was directed to file a brief in opposition to the corrections defendants' motion and was admonished that failure to file an opposition brief would result in the corrections defendants' motion being deemed unopposed. (Doc. 105 ¶ 1) (citing M.D. PA. LOCAL RULE OF COURT 7.6). (See also Doc. 3, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

II. **Allegations of the Amended Complaint**

Shade's claims stem from the alleged lack of medical care he received at SCI-Retreat and the State Correctional Institution at Dallas ("SCI-Dallas") following surgery for a detached retina. (Doc. 34). On July 8, 2014, Shade underwent eye surgery at the Wilkes-Barre General Hospital for a detached retina. (Id. at 6, ¶ 17). After the surgery, Shade returned to SCI-Retreat with the following instructions from his operating ophthalmologist: (1) that Shade lay face down on a bed for five (5) to seven (7) days following the surgery, avoiding unnecessary head and body movements; (2) that Shade take three (3) different types of eye drops; and, (3) that Shade avoid excessive heat, humidity, cold temperatures, and other hazardous conditions. (Id. at 7-45, ¶¶ 23, 26, 33, 53, 82, 108). Because SCI-Retreat lacked an operating medical infirmary, a prison doctor ordered that Shade be transferred to the medical infirmary at SCI-Dallas. (Id. at 8-9, ¶ 28; Doc. 34, at 18-19).

On July 9, 2014, Shade was moved from SCI-Retreat to the medical infirmary at SCI-Dallas. (Doc. 34, at 20, ¶ 52). Defendants prepared a DC-141 Part 1 Report, identified as Report Number 442435. (Id. at 15-18, ¶¶ 39, 43, 45-46). Pursuant to the DOC's Administrative Directive ("DC-ADM") 802, this Report placed Shade in administrative custody for non-disciplinary reasons on July 9, 2014. (Doc. 64-1, at 10-17). Shade spent approximately four (4) hours in an infirmary bed at SCI-Dallas before being transferred to a psychiatric observation room cell ("P.O.R. Cell"). (Doc. 34, at 20, ¶ 52; Doc. 34, at 44, ¶ 106). Shade claims that correctional officers at SCI-Dallas transferred him to three (3) different P.O.R. Cells over the course of forty-eight (48) hours, and consequently subjected him to numerous strip searches.

(Id. at 21-23, ¶¶ 53, 55).  Shade alleges that the P.O.R. Cells posed an "unhealthy, inhumane, unsanitary, and unsafe environment" during his recovery from eye surgery.  (Id. at 36, ¶ 85).

On July 13, 2014, Shade filed an informal request form DC135A, pursuant to DC-ADM 804, wherein he sought to be removed from administrative custody and transferred back to general population.  (Id. at 58, ¶ 146).  On July 16, 2014, defendant Demming denied Shade's informal request, and explained that Shade was temporarily placed in administrative custody in order to facilitate his post-operative care, but would be transferred back to SCI-Retreat once medically cleared to be moved.  (Doc. 34, at 58, ¶ 146).

On July 14, 2014, Shade was moved to a medical observation room cell ("M.O.R. Cell") at SCI-Dallas.  (Doc. 34, at 26-27, ¶ 63; Doc. 34, at 48, ¶ 117).  He remained in the M.O.R. Cell until he was released from administrative custody on July 22, 2014.  (Id.)  On July 22, 2014, Shade was transferred back to SCI-Retreat.  (Id. at 23, ¶ 55).

**III.    Statement of Material Facts**[3]

On August 4, 2014, Shade filed grievance number 520882 pursuant DC-ADM 804 against SCI-Retreat staff regarding his placement in administrative custody. (Doc. 104-2, at 8-11). On August 4, 2014, the Facility Grievance Coordinator rejected the grievance on the grounds that Shade improperly utilized DC-ADM 804 to file a grievance in relation to administrative custody procedures, instead of DC-ADM 802. (Doc. 104-2, at 7). The Facility Grievance Coordinator also denied the DC-ADM 804 grievance as untimely, as Shade failed to file it within fifteen (15) working days of the incident. (Id.) Shade filed an appeal to the Facility Manager. (Doc. 104-2, at 5). On August 8, 2014, the Facility Manager dismissed the appeal and found that the grievance was untimely, and that the issues must be addressed pursuant to another avenue of redress. (Doc. 104-2, at 6). Shade then filed an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 104-2, at 3-4). On September 19, 2014, the Chief Grievance Officer denied grievance number 520882

---

[3] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Unless otherwise noted, the factual background herein derives from the corrections defendants' Rule 56.1 statement of material facts and supporting exhibits. (Docs. 103, 103-1, 104-2). Shade did not file a response to the corrections defendants' statement of material facts. The court accordingly deems the facts set forth by the corrections defendants to be undisputed. See LOCAL RULE OF COURT 56.1. See also (Doc. 105 ¶ 2) (advising Shade that failure to file a responsive statement of material facts would result in the facts set forth in the corrections defendants' statement of material facts being deemed admitted).

on final appeal, confirming that the issues asserted therein should have been handled according to DC-ADM 802, and that Shade did not submit the grievance within fifteen (15) working days of the event that gave rise to his claims. (Doc. 104-2, at 2).

## IV. Discussion

The corrections defendants argue that Shade failed to properly exhaust his concerns under either DC-ADM 802 or DC-ADM 804 prior to filing the instant action. (Doc. 104). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through

administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Nyhuis, 204 F.3d at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. Spruill, 372 F.3d at 227-32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).[4]

The DOC has three (3) different administrative remedy processes which collectively provide an inmate a route to challenge every aspect of confinement. See Fortune v. Bitner, 2006 WL 2796158, at *7 (M.D. Pa. Sep. 25, 2006), aff'd, 285 F.

---

[4] In accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded the parties the opportunity to be heard under Small, 728 F.3d at 268. (Doc. 106).

App'x 947 (3d Cir. 2008).  Those policies are: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802.  See PA. DEP'T OF CORR., Policies, https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited March 26, 2020).  The three (3) programs address specific issues which may arise within the prison, and one administrative remedy may not be substituted for the other. Fortune, 2006 WL 2796158, at *7.  An inmate who has received a misconduct citation and seeks to appeal that misconduct or allege a grievance in connection with the events surrounding that misconduct, must use DC-ADM 801.  DC-ADM 801.  "All issues concerning an inmate's placement in [administrative] custody or the duration, conditions, or other circumstances of his/her [administrative custody] must be addressed through the procedures set forth in [DC-ADM 802] and may not be addressed through the procedures set forth in . . . DC-ADM [804]."  DC-ADM 802 § 2(D)(9).  Under DC-ADM 804, "[a]n inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance." DC-ADM 804 § 1(A)(13).

Pursuant to DC-ADM 802, when an inmate is placed in administrative custody, a hearing shall be conducted by the Program Review Committee ("PRC"). (Doc. 104-3, PA. DEP'T OF CORR., No. DC-ADM 802 § 2(A)(1)).  An inmate may raise their concerns with the PRC and the PRC will issue a written decision regarding the rational for the administrative custody placement.  (Id.)  If the inmate is dissatisfied with the PRC's decision, he may appeal the decision of the PRC concerning his initial confinement in administrative custody to the Facility

Manager within two (2) work days of the completion of the hearing. DC-ADM 802 § 2(C)(1). The inmate may then file a further appeal to the Office of the Chief Hearing Examiner within seven (7) calendar days of receipt of the Facility Manager's decision. DC-ADM 802 § 2(C)(2). Once all of these steps are pursued, an inmate will be deemed to have exhausted administrative remedies.

DC-ADM 804 permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. Id. This must occur within fifteen (15) days after the events upon which the claims are based. Id. Within fifteen (15) days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Id. Thereafter, within fifteen (15) days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. Id. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules. See Woodford v. Ngo,

9

548 U.S. 81, 90-93 (2006). It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit."). Shade did not do so in this case.

The record reflects that Shade only filed one (1) grievance relating to the claims of the amended complaint. The grievance was denied on all levels of review. Specifically, on August 4, 2014, Shade filed grievance number 520882, pursuant to DC-ADM 804. The Chief Grievance Officer denied grievance number 520882 on final appeal, finding that the issues in the grievance should have been handled according to DC-ADM 802, and that Shade did not submit the grievance within fifteen (15) working days of the event that gave rise to his claims.

The undisputed evidence establishes that Shade failed to properly exhaust his placement in administrative custody under DC-ADM 802. Pursuant to the DOC regulations, DC-ADM 802 is the exclusive administrative remedy available for claims involving the placement, duration, and conditions of an inmate's administrative custody confinement. DC-ADM 802 § 2(D)(9). Additionally, DC-ADM 804 § 1(A)(7) explicitly provides that "[i]ssues concerning . . . the reasons for placement in administrative custody will not be addressed through [DC-ADM 804] and must be addressed through . . . DC-ADM 802, 'Administrative Custody Procedures.'" DC-ADM 804 § 1(A)(7); see also Fortune, 2006 WL 2796158, at *7 ("Inmates are not permitted to challenge their [administrative custody] or [disciplinary custody] placement via DC-ADM 804, the Inmate Grievance Policy."). Grievance number 520882 was denied on all levels of review because Shade

improperly utilized DC-ADM 804 to file a grievance related to his placement in administrative custody, instead of DC-ADM 802. There is no evidence that Shade ever utilized DC-ADM 802 to properly raise the issues concerning his placement in administrative custody.

The record also reflects that Shade failed to properly exhaust his grievance under DC-ADM 804. Pursuant to DC-ADM 804, "[t]he inmate must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based." DC-ADM 804 § 1(A)(8). Grievance number 520882 was denied on all levels of review because Shade did not submit the grievance within fifteen (15) working days of the event that gave rise to his claims.

Shade has failed to respond to the corrections defendants' motion and failed to provide any evidence that he properly exhausted the administrative remedies regarding the claims presently pending before the court.

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. See, e.g., Camp, 219 F.3d at 281; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Recently, the Third Circuit Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." Shifflett v. Korszniak, 934 F.3d 356, 359 (3d Cir. 2019). The

record simply does not support a finding that the administrative process was unavailable to Shade. To the contrary, it establishes that Shade had ready access to the administrative remedy process.

It is clear that Shade failed to properly exhaust administrative remedies with respect to his present claims. Shade has not demonstrated that his failure to properly pursue such administrative relief should be excused. Thus, Shade's claims are barred on administrative exhaustion grounds, and the corrections defendants are entitled to summary judgment.

## V.     Conclusion

For the reasons set forth above, the court will grant the corrections defendants' motion (Doc. 102) and enter summary judgment in their favor. An appropriate order will issue.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      April 16, 2020